**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-866-WJM-NRN

ENRIQUE PARRA, JR.,

      Plaintiff,

v.

KEITH STAMBAUGH, in his individual capacity;
SAM COFFMAN, in his individual capacity;

      Defendant.

---

## ~~SECOND~~ THIRD AMENDED COMPLAINT AND JURY DEMAND

---

      Plaintiff Enrique Parra, Jr. (hereinafter "Mr. Parra"), by and through his attorneys, Matthew J. Cron and Nicholas A. Lutz of RATHOD | MOHAMEDBHAI, LLC, respectfully alleges for his ~~Second~~ Third Amended Complaint and Jury Demand as follows:

### INTRODUCTION

      This case involves grotesque abuses of power by Alamosa County Sheriff's Office ("ACSO") Corporal Keith Stambaugh and his law enforcement agency.  In or around the first week of September 2017, Defendant Stambaugh visited Mr. Parra's jail cell by himself.  After sending Mr. Parra's cellmate to the gym, Defendant Stambaugh claimed that he needed to search the cell.  When Mr. Parra asked why, Defendant Stambaugh got upset and ordered him to strip naked.  Defendant Stambaugh removed his taser and placed it on Mr. Parra's back.  Holding the taser with one hand, Defendant Stambaugh felt Mr. Parra's upper body.  Defendant Stambaugh then placed his hand on Mr. Parra's leg and moved it up until he reached his genitals.  After touching Mr. Parra's

genitals, Defendant Stambaugh stuck his fingers inside the crack of Mr. Parra's buttocks and probed his anus.  When Mr. Parra asked Defendant Stambaugh to stop, Defendant Stambaugh replied, "You're going to play or get played."  After abusing his power over Mr. Parra, Defendant Stambaugh ended the "search" and left Mr. Parra naked in his cell.  Defendant Stambaugh did not wear gloves during this sexual assault.

On September 4, 2017, Mr. Parra told his sister via a phone call that a guard was "gay" and was sexually harassing him.  Mr. Parra's sister urged him to complain.  On September 6, 2017, Mr. Parra attempted to do so, specifically naming Defendant Stambaugh as the perpetrator.  However, ACSO officials lined up to protect Defendant Stambaugh.  Upon receiving the grievance, ACSO Sergeant Derek Glenn and ACSO Deputy Tyler Atkins interviewed Mr. Parra.  Sergeant Glenn began the interview by calling Mr. Parra a "criminal with rights" and reading him his *Miranda* rights. Understandably fearing he was in legal jeopardy, Mr. Parra asked to speak with his attorney.  Instead, Sergeant Glenn exploited Mr. Parra's fear by handing him a waiver of prosecution form.  The ACSO then used the signed waiver of prosecution form to excuse itself from any duty to investigate the allegations against Defendant Stambaugh. As Defendant Stambaugh himself testified, the ACSO uses waiver of prosecution forms so they can say "we did try to help you, but you signed this document saying you didn't want anything done."

Later on September 6, 2017, Mr. Parra filed a kite saying he would not go through with "sexual assault charges because I am not no snitch so Cop Stambaugh keep that gay shit at the door."  On September 9, 2017, Mr. Parra received a response: "printed for Stambaugh."  Within weeks, in clear-cut retaliation for Mr. Parra's

allegations against him, Defendant Stambaugh caused new charges to be filed against Mr. Parra.  Most egregiously, Defendant Stambaugh provided Mr. Parra with a waiver of prosecution form to send to the alleged victim in Mr. Parra's underlying criminal case, and then signed an arrest warrant charging Mr. Parra with felony counts for violation of a protection order and tampering with a witness/victim when Mr. Parra attempted to mail out the form (Case No. 17CR470).  In a separate case, Defendant Stambaugh caused an assault charge to be filed against Mr. Parra for an incident in which another inmate attacked Mr. Parra with a mop handle, yet Mr. Parra and not the other inmate was charged (Case No. 17M340).  Both of these highly dubious criminal cases were dismissed prior to trial.

After Mr. Parra was transferred to Chaffee County Detention Center ("CCDC") he complained about Defendant Stambaugh's sexual assault to detention officers who were not yoked by loyalty to Defendant Stambaugh.  When the ACSO learned that Mr. Parra had taken his complaints to a new agency, they assigned Sam Coffman, a detective with the ACSO, to "investigate."  Instead of investigating Defendant Stambaugh, Detective Coffman turned the screws on Mr. Parra, filing an arrest warrant seeking charges for three felonies and one misdemeanor against Mr. Parra (Case No. 18CR94).  Two charges were dismissed by the Alamosa County District Court for want of probable cause, and Mr. Parra was acquitted of the remaining two charges after a three-day jury trial.  Thus, **after** complaining about Defendant Stambaugh, Mr. Parra was charged with five felonies and four misdemeanors in three separate criminal cases based on arrest warrants written by Defendant Stambaugh or relating to Defendant Stambaugh.

## I.    JURISDICTION, VENUE, AND PARTIES

1.      This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).[1]  <u>Jurisdiction over Mr. Parra's state-law claim against Defendant Coffman is conferred by 28 U.S.C. § 1367(a).</u>  Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1997e(d)(2).

2.      Venue is proper within this District under 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the jurisdiction of the United States District Court, District of Colorado.  Defendant Stambaugh resides in this District and did so at the time of the events giving rise to this litigation.  <u>Defendant Coffman resides in this District and did so at the time of the events giving rise to this litigation.</u>

3.      At all times relevant hereto, Plaintiff Enrique Parra Jr. was a citizen of the United States and a resident of Colorado.  At all relevant times, Mr. Parra has been incarcerated either at the Alamosa County Jail or the Chaffee County Detention Center.  Both the Alamosa County Jail and the Chaffee County Detention Center are correctional facilities that are located in the State of Colorado.

4.      Defendant Keith Stambaugh is a natural person who at all relevant rimes resided and was domiciled in the State of Colorado.  Defendant Stambaugh is, and at all times relevant to this litigation has been, an employee of the Alamosa County Sheriff's Office.  Defendant Stambaugh was, at all times relevant to this litigation, acting

---

[1] ~~Mr. Parra intends to bring state law claims against Alamosa County Sheriff's Office Detective Sam Coffman under this Court's supplemental jurisdiction authority.  *See* 28 U.S.C. § 1367. Such claims, however, are not yet exhausted under the Colorado Government Immunity Act and so cannot be pled at present time.  Plaintiff intends to move for leave to amend the complaint once the claims are ripe.~~

within the scope of his employment and under color of state law.  He is being sued in his individual capacity.

5.      <u>Defendant Sam Coffman is a natural person who at all relevant rimes resided and was domiciled in the State of Colorado.  Defendant Coffman is, and at all times relevant to this litigation has been, an employee of the Alamosa County Sheriff's Office.  Defendant Coffman was, at all times relevant to this litigation, acting within the scope of his employment and under color of state law.  He is being sued in his individual capacity.</u>

## II.      FACTUAL ALLEGATIONS

**Defendant Stambaugh Verbally Harassed Mr. Parra**

6.      In the summer of 2017, Mr. Parra was incarcerated at the Alamosa County Jail ("ACJ") while awaiting criminal trial.  Mr. Parra was held on pre-conviction detainment.

7.      Soon after Mr. Parra was detained, Defendant Stambaugh began engaging in verbal sexual harassment of Mr. Parra.

8.      Defendant Stambaugh made sexually laced comments about Mr. Parra's physique.  For example, while Mr. Parra was working out in the ACJ's gym, Defendant Stambaugh commented that Mr. Parra "look[ed] good working out."

9.      Defendant Stambaugh also commented that he liked Mr. Parra's tattoos in a suggestive manner.

10.      Similar harassing comments took place approximately four times.  At the time, however, Mr. Parra did not take much notice of these inappropriate comments.

11.      Defendant Stambaugh made these sexually harassing comments over the

intercom system directly to Mr. Parra.

**Defendant Stambaugh Sexually Assaulted Mr. Parra**

12.     On July 18, 2017, Mr. Parra re-offended while out on bond, and he was returned to the ACJ.

13.     As part of the booking process, Mr. Parra was strip-searched by Deputy Damien Sanchez on July 18, 2017.[2]

14.     ACSO policy instructs employees to conduct as much of a search as possible while the prisoner is clothed.  With respect to searches of private areas, a searching ACSO employee will instruct the prisoner on how to manipulate their body parts to allow for visual inspection.  It is unlawful for a jail deputy to touch an inmate's naked body during a search.

15.     Under Colorado law, "Every peace officer or employee of a . . . sheriff's department conducting a strip search shall obtain the written permission of the . . . sheriff or an agent thereof . . . ."  C.R.S. § 16-3-405(4).

16.     Under Colorado law, "No search of any body cavity other than the mouth shall be conducted without the written permission of . . . a sheriff or an agent thereof authorizing a body cavity search.  The search must be performed under sanitary conditions and conducted by a licensed physician or nurse."  C.R.S. § 16-3-405(5).

17.     After completing the booking process, Mr. Parra was placed into the A-Pod of the ACJ.

18.     The ACJ is outfitted with cameras that are able to view every open area in a pod.  There were cameras in the A-Pod at all relevant times.

---

[2] Mr. Parra alleges no wrongdoing during Deputy Sanchez's search, as that search was conducted pursuant to policy and Colorado law.

19.     The ACJ has sole custody, possession, and control over recordings made by ACJ cameras.

20.     Although Defendant Stambaugh had been promoted to Investigator on July 1, 2017, he was still able to go into the ACJ and move freely about the facility.

21.     After Mr. Parra was booked into A-Pod, likely around the first week of September 2017,[3] Defendant Stambaugh arrived at Mr. Parra's cell.

22.     Defendant Stambaugh was armed with a taser, which is the primary weapon carried by law enforcement officers in jail.

23.     Seeing that Mr. Parra's cellmate was present, Defendant Stambaugh ordered the cellmate out of the cell.

24.     Upon the departure of Mr. Parra's cellmate, Defendant Stambaugh entered Mr. Parra's cell.

25.     Defendant Stambaugh accused Mr. Parra of having contraband and informed Mr. Parra that he would be searching the cell.

26.     When Mr. Parra asked for more information regarding the basis for the search, Defendant Stambaugh ordered Mr. Parra to strip.

27.     Mr. Parra removed his clothes and handed them to Defendant Stambaugh.

28.     Defendant Stambaugh then ordered Mr. Parra to turn around and interlock his hands on the top of his head.

29.     Defendant Stambaugh removed his taser from its holder and held it against Mr. Parra's back.

---

[3] Mr. Parra cannot recall the precise date that Defendant Stambaugh sexually assaulted him, as it is extremely difficult to keep track of dates while incarcerated.

30.     Pressing the taser against Mr. Parra's back, Defendant Stambaugh began touching Mr. Parra's upper body with his free hand.

31.     Defendant Stambaugh then moved down to Mr. Parra's legs and worked his way up towards Mr. Parra's groin.

32.     After touching Mr. Parra's genitals, Defendant Stambaugh moved his hand towards Mr. Parra's buttocks, stuck his fingers in the crack, and probed Mr. Parra's anus.

33.     As Defendant Stambaugh was touching Mr. Parra's private regions, Mr. Parra attempted to pull away and said, "I don't play that way."

34.     Defendant Stambaugh responded, "You're going to play or get played."

35.     Defendant Stambaugh did not wear gloves while sexually assaulting Mr. Parra.

36.     Despite protocol requiring two officers to be present at any strip search, Defendant Stambaugh conducted this "search" of Mr. Parra by himself.

37.     Indeed, Defendant Stambaugh had intentionally ordered Mr. Parra's cellmate out of the cell so that he would be alone with Mr. Parra.

38.     Despite protocol requiring the use of gloves by any officer conducting a strip search, Defendant Stambaugh did not use gloves during the strip search of Mr. Parra.

39.     Despite Colorado law requiring Defendant Stambaugh to obtain written permission to conduct a strip search, he did not obtain such permission prior to conducting the search of Mr. Parra.

40.     Defendant Stambaugh similarly violated Colorado law that forbids jail

employees from touching naked prisoners.

41.     Having exerted his dominance over Mr. Parra, Defendant Stambaugh then ended the strip search and ordered Mr. Parra to put his clothes back on.

42.     Defendant Stambaugh never searched Mr. Parra's cell, nor did he recover any contraband.

**Mr. Parra's Complaints Regarding Defendant Stambaugh's Sexual Assault Were Swept Under the Rug by ACSO Officers**

43.     Mr. Parra filed multiple grievances related to Defendant Stambaugh's sexual harassment and assault.

44.     On or about September 4, 2017, Mr. Parra had a telephone call with his sister in which he disclosed that there was a "gay guard" who was telling Mr. Parra that he looked good with his shirt off.  Mr. Parra complained to his sister that he was "fed up" with the guard's comments.  Mr. Parra's sister advised him that the comments constituted sexual harassment and that he should complain.

45.     On September 6, 2017, Mr. Parra had another phone call with his sister. In this call, he disclosed that guards were "playing games with [him]" ever since he "told them that the guard is sexually harassing me."  Mr. Parra named Defendant Stambaugh and stated that "he walked into the room [and] rubbed against me and I told him I don't play like that . . . don't be touching me."

46.     On or about September 6, 2017, Mr. Parra told at least one other prisoner about Defendant Stambaugh's sexual assault.

47.     Also on September 6, 2017, Mr. Parra verbally told ACSO Deputy Tyler Atkins that he wanted to grieve Defendant Stambaugh's sexual harassment.

48.     Deputy Atkins led Mr. Parra into a private room at the ACJ where he and

ACSO Sergeant Derek Glenn "interviewed" Mr. Parra about the basis for his sexual harassment complaint.

49.     Sergeant Glenn began the interview by saying that Mr. Parra was "a criminal with rights."

50.     Sergeant Glenn then provided a *Miranda* advisement to Mr. Parra.

51.     The purpose of a *Miranda* advisement is to inform a criminal suspect of his rights, not to advise the victim of a crime.

52.     Among other warnings, a *Miranda* advisement includes informing suspects that they have the right to remain silent and the right to an attorney.

53.     Given that Mr. Parra had grieved Defendant Stambaugh's sexual harassment, Sgt. Glenn had no basis to treat Mr. Parra like the suspect of a crime.

54.     Having been read his *Miranda* rights before, Mr. Parra believed that he faced criminal jeopardy and asked to speak to his attorney.  Mr. Parra's request to speak with his attorney was made just after Sgt. Glenn had expressly advised him of his right to do so.

55.     Understandably, Mr. Parra did not want to disclose anything about Defendant Stambaugh's sexual harassment prior to speaking with his attorney given the *Miranda* advisement.

56.     When Mr. Parra refused to disclose any information without first consulting with his attorney, Sgt. Glenn gave Mr. Parra a "waiver of prosecution" form to indicate that Mr. Parra did not want to move forward with his allegations against Defendant Stambaugh.

57.     Having been read his *Miranda* rights yet denied the opportunity to consult

with his attorney, Mr. Parra feared criminal liability and hoped to make that threat go away by signing the form.

58.     A waiver of prosecution form is used by the ACSO to effectively shut down an investigation at the outset.

59.     Defendant Stambaugh has testified that a waiver of prosecution form is a way for the ACSO to say, "We did try to help you, but you signed this document saying you didn't want anything done."

60.     Defendant Stambaugh testified that Mr. Parra's refusal to disclose information about his allegations of sexual abuse made the grievance "null and void."

61.     Defendant Stambaugh testified that "[t]he moment our agency tried to help [Mr. Parra], tried to give him his moment, he stopped it right then and there."

62.     ACSO Detective Sam Coffman testified that "[t]he waiver of prosecution is more . . . used to safeguard the agency than the complaining victim."

63.     Despite signing the waiver of prosecution form, Mr. Parra continued to raise concerns about Defendant Stambaugh.

64.     On September 6, 2017, Mr. Parra filed a grievance, stating: "I'm not going through with the sexual assault charges because I'm not no snitch, so Cop Stambaugh, keep that gay shit at the door."

65.     On September 9, 2017, an ACSO officer responded to this grievance by saying that it would be printed for Defendant Stambaugh.

**Defendant Stambaugh Abuses His Law Enforcement Authority, Causing Charges to be Filed Against Mr. Parra**

66.     At the latest, Defendant Stambaugh knew on September 9, 2017, that Mr. Parra had accused him of sexual assault.

11

67.     At the criminal trial in Case No. 18CR94, Defendant Stambaugh testified that he was not involved in the investigation because it would be unethical given that Mr. Parra had accused him of sexual assault.

68.     Defendant Stambaugh testified: "I needed to segregate myself from this, because the complaint came out, and I can't have any – any part in it whatsoever, because for me to have some kind of activity inside the complaint, then that's just unethical.  So no, I took no part in this."

69.     He further testified: "When I heard my name mentioned in his phone calls, I knew right away I needed to segregate myself from anything to keep from doing anything to cause him to try to make any more complaints."

70.     Despite Defendant Stambaugh's testimony that he needed to be segregated from investigating Mr. Parra, he failed to tell the jury that he had authored an arrest warrant for two felony and two misdemeanor counts on September 22, 2017 (Case No. 17CR470) and submitted criminal charges to the District Attorney's Office in another case, resulted in a misdemeanor charge (Case No. 17M340).

71.     Both criminal cases directly initiated by Defendant Stambaugh were dismissed by the District Attorney's Office prior to trial.

72.     In Case No. 17CR470, Mr. Parra was charged with two felony counts of Witness/Victim Tampering and two misdemeanor counts of Violation of Protection Order.

73.     One of the principal allegations of the charges against Mr. Parra was that he attempted to provide the victim in Case No. 17CR333 with a waiver of prosecution

form.[4]

74.     On September 22, 2017, less than two weeks after Defendant Stambaugh

learned that Mr. Parra had accused him of sexual assault, Defendant Stambaugh

signed off on an arrest warrant.

75.     The arrest warrant mentions the term "waiver of prosecution" at least

sixteen times.

76.     Defendant Stambaugh admitted at trial that he provided the waiver of

prosecution form to Mr. Parra.

77.     However, the arrest warrant omits the material fact that Defendant

Stambaugh provided the waiver of prosecution form to Mr. Parra.

78.     The arrest warrant also omits the fact that Defendant Stambaugh

suggested to Mr. Parra that he send the waiver of prosecution form to the victim as a

means to rid himself of the charges in Case No. 17CR333.

79.     Mr. Parra complained about the retaliatory arrest warrant, filing a

grievance on September 22, 2017, writing: "I don't know what to do I don't need any

more problems but for some reason you guys are targeting me please stop I need to

see some one when I seen Srgt. Stambaugh today I knew some thing has to be done

because he might be doing to others I need to see some one to put a stop to Srgt.

Stamaugh and any one else that is targeting me."

80.     Four days later, on September 26, 2017, Mr. Parra wrote: "I have been

targeted by Sgt. Stambaugh he has given me the papers for waiver of prosecution I sent

them out to my family and told the on the phone about the papers.  The Sgt. Stambause

---

[4] Case No. 17CR333 involved criminal charges arising from a domestic incident between Mr.
Parra and his then-girlfriend.

sent my phone calls to the D.A. Office to have me charged with new felony charges."

81.     On an unknown date in September 2017, Defendant Stambaugh also submitted criminal charges to the District Attorney's Office, leading to a misdemeanor assault charge against Mr. Parra in Case No. 17M340.

82.     In that incident, another inmate had attacked Mr. Parra with a mop handle.

83.     Mr. Parra defended himself from the attack.

84.     However, Defendant Stambaugh sought criminal charges against Mr. Parra, but not against the inmate who had assaulted Mr. Parra.

85.     On September 27, 2017, Mr. Parra filed yet another grievance, writing: "I would like to know how and why I am being charged with assault when I was not the aggressor . . . I guess this is Sgt. Sambaughs doing once again."

86.     All criminal charges in Case No. 17CR470 and Case No. 17M340 were dismissed.

**Defendant Coffman filed additional baseless charges against Mr. Parra after Mr. Parra's Continued Complaints About Defendant Stambaugh's Sexual Abuse ~~Leads to Even More Criminal Charges Against Him~~**

87.     On December 7, 2017, Mr. Parra grieved that "I have been trying to see someone about sexual harassment and don't know if this person is harassing others.  It needs to be put to a stop.  Thank you for your time."

88.     The response to the December 7, 2017 grievance stated, "I will let the jail investigator know."  Defendant Stambaugh was the jail investigator.

89.     Subsequent to the December 7, 2017 grievance, ACSO Detective Sam Coffman was assigned to investigate.

90.     Detective Coffman quickly concluded Mr. Parra's allegations were

unfounded.

91.    The investigation that Detective Coffman conducted in making this determination was to review Sgt. Glenn's report.

92.    Detective Coffman testified that he "obtained the reports from and information from Sergeant Glenn from the 9-6 incident, went over that and saw that he had signed the waiver of Prosecution and requested to talk to his attorney."

93.    Detective Coffman did not interview Mr. Parra regarding the sexual harassment allegation.

94.    Detective Coffman stated that his "investigation" was "never taken to the level of an internal investigation because of lack of foundation for the claim."

95.    Detective Coffman did not search for any video of Defendant Stambaugh in the A-Pod during the dates that Mr. Parra was housed there.

96.    On or about January 2, 2018, Mr. Parra was transferred from the ACJ to the Chafee County Detention Center ("CCDC").

97.    On or about January 8, 2018, Mr. Parra sent a letter to Chaffee County Victim's Advocate Janice Veltri.

98.    The letter stated, "This is very hard for me to say, but I've been sexually assaulted and sexually harassed.  I need help, and I need someone to talk to."

99.    On or about January 8, 2018, Ms. Veltri informed Chafee County Sheriff's Office ("CCSO") Sergeant Jim James about Mr. Parra's letter.

100.    Sergeant James and Ms. Veltri met with Mr. Parra and spoke to him without recording the interview.  They subsequently conducted a recorded interview of Mr. Parra.

101.    Both Sgt. James and Ms. Veltri found Mr. Parra credible.

102.    Ms. Veltri testified that Mr. Parra's demeanor was the same in all interviews, that he was soft-spoken and embarrassed by what had happened to him.

103.    Sgt. James testified that Mr. Parra's story remained consistent between the various interviews.

104.    On or about January 11, 2018, Detective Coffman learned that Mr. Parra had informed CCSO employees about Defendant Stambaugh's sexual abuse.

105.    Again, Detective Coffman was assigned to investigate.

106.    Detective Coffman allegedly reviewed the reports and interviews conducted by the CCSO officials.

107.    Detective Coffman did not interview Mr. Parra.

108.    Detective Coffman did not interview Defendant Stambaugh.

109.    Detective Coffman did not interview Mr. Parra's cellmate.

110.    Detective Coffman did not interview any of the CCSO officials who spoke to Mr. Parra.

111.    In fact, Detective Coffman did not interview a single natural person as part of his investigation.

112.    When asked why he did not conduct any interviews, Detective Coffman replied that he "didn't need to."  He expounded: "I couldn't find any evidence that would support Mr. Parra's claim."

113.    During his "investigation," Detective Coffman only reviewed one twelve-hour segment of video taken of the A-pod from July 21, 2017.

114.    Detective Coffman only reviewed that twelve-hour segment because

Defendant Stambaugh had told him that he interacted with Mr. Parra on July 21, 2017.

Detective Coffman testified, "I had asked Corporal Stambaugh . . . to obtain the video,

just because that was a day he thought he was there."

115.    Thus, Detective Coffman relied on Defendant Stambaugh to gather

evidence in a case concerning Defendant Stambaugh's own alleged criminal conduct.

116.    Defendant Stambaugh did not appear on the video footage that Detective

Coffman reviewed.

117.    Detective Stambaugh testified that he had no explanation as to why he did

not appear on the video.

118.    Detective Coffman did not look at any video from the dates between

September 1, 2017 to September 6, 2017.

119.    Rather than search for video showing the interaction between Defendant

Stambaugh and Mr. Parra, Detective Coffman failed to request any other video.

120.    Detective Coffman failed to review any other video despite Defendant

Stambaugh's own admission that he had interacted with Mr. Parra in the A-Pod during

the approximate time period when Mr. Parra alleged he had been sexually assaulted.

121.    At a minimum, video may have shown Defendant Stambaugh ordering Mr.

Parra's cellmate to leave and may have shown Defendant Stambaugh entering Mr.

Parra's cell.

122.    On or about March 14, 2018, Detective Coffman filed an Affidavit and

Application for Arrest Warrant ("Arrest Warrant") charging Mr. Parra with three felonies

and one misdemeanor: False Report to Authorities, Harassment, Intimidating a Witness

or Victim, and Attempt to Influence a Public Servant.

123.    In his Arrest Warrant, Detective Coffman justified the sought-after charges with numerous false or misleading statements.

124.    For example, Detective Coffman stated, "No video of Cpl. Stambaugh was located contacting Parra at A-102 or in A pod where Parra is housed due to his classification."  As pled above, Detective Coffman did not look for such video, which was in the sole possession, custody, and control of his office.

125.    Detective Coffman also stated that the only time Mr. Parra grieved Defendant Stambaugh for sexual harassment was on December 7, 2017.  He wrote, "No grievances were made about sexual harassment, sexual assault, or any Deputy misconduct from 06-01-2017 to 12-06-2017."  As pled above, Mr. Parra filed numerous grievances regarding Defendant Stambaugh's sexual harassment, each of which would have been in the sole possession, custody, and control of Detective Coffman's office.

126.    Detective Coffman stated that "[n]one of Parra's accusations can be substantiated against Cpl. Stambaugh."  As pled above, Detective Coffman made no efforts to substantiate the accusations.

127.    Even with the myriad misleading and false statements in the Arrest Warrant, an Alamosa County District Court judge still found the allegations so wanting that the Court found no probable cause for the charges of Harassment or Intimidating a Witness or Victim.

128.    On December 10, 2018, Mr. Parra was tried on the counts of False Reporting and Attempt to Influence a Public Servant.

129.    On December 12, 2018, a jury acquitted Mr. Parra on both counts.

130.    The jury deliberated for less than two hours before reaching their

unanimous verdict.

### III.    CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**(Against Defendant Stambaugh)**

131.    Mr. Parra hereby incorporates all of the paragraphs of this Second

Amended Complaint as if fully set forth herein.

132.    Defendant Stambaugh was acting under color of state law in his actions

and inactions at all times relevant to this action.

133.    At the time of the events giving rise to this action, Mr. Parra had a clearly

established Fourth Amendment right not be subjected to unreasonable searches, of

which a reasonable officer in Defendant Stambaugh's position would have known.

134.    No legitimate penological interest supported the unreasonable strip search

of Mr. Parra by Defendant Stambaugh.  Rather, the strip search was conducted to

satisfy Defendant Stambaugh's own prurient interest.

135.    Plaintiff had a clearly established right not to be subjected to a strip search

to satisfy Defendant Stambaugh's sexual interests.

136.    Mr. Parra suffered damages as a result of the unreasonable strip search

by Defendant Stambaugh.

137.    Defendant Stambaugh's acts or omissions were the moving force behind

and proximate cause of Mr. Parra's injuries.

138.    Defendant Stambaugh's acts or omissions caused Mr. Parra to suffer

harm in that his Fourth Amendment right not to be subjected to an invasive strip search

unassociated with any legitimate penological interest was violated.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation
### Cruel and Unusual Punishment
### (Against Defendant Stambaugh)

139.    Mr. Parra hereby incorporates all other paragraphs of this Second Amended Complaint as if fully set forth herein.

140.    Defendant Stambaugh was acting under color of state law in his actions and inactions at all times relevant to this action.

141.    At the time of the strip search of him, Mr. Parra enjoyed a clearly established right to be free from cruel and unusual punishment, of which a reasonable officer in Defendant Stambaugh's position would have known.

142.    Under the guise of an unreasonable strip search, Defendant Stambaugh sexually assaulted Mr. Parra by, *inter alia*, digitally probing Mr. Parra's anal cavity.

143.    Defendant Stambaugh applied the force described above maliciously and sadistically for the very purpose of causing harm with no legitimate penological purpose or interest.

144.    Mr. Parra had a clearly established right to be free of sexual assault by Defendant Stambaugh.

145.    Mr. Parra suffered damages, including physical pain, as a result of the unreasonable strip search by Defendant Stambaugh.

146.    Defendant Stambaugh's acts or omissions were the moving force behind and proximate cause of Mr. Parra's injuries.

147.    Defendant Stambaugh's acts or omissions caused Mr. Parra to suffer harm in that his Fourteenth Amendment rights not to be subjected to cruel and unusual punishment was violated.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – First Amendment Violation**
**Retaliation**
**(Against Defendant Stambaugh)**

148.    Mr. Parra hereby incorporates all other paragraphs of this Second

Amended Complaint as if fully set forth herein.

149.    Mr. Parra engaged in constitutionally protected activity when he reported

Defendant Stambaugh for sexually harassing and assaulting him.

150.    As a result of Mr. Parra's constitutionally protected complaints, Defendant

Stambaugh initiated multiple criminal prosecutions against Mr. Parra.

151.    Defendant Stambaugh's retaliatory actions against Mr. Parra would chill a

person of ordinary firmness from continuing to engage in constitutionally protected

protest.

152.    Defendant Stambaugh's actions were substantially motivated as a

response to Mr. Parra's exercise of his constitutionally protected rights.

153.    Defendant Stambaugh's actions, as described herein, were undertaken

intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Mr. Parra's

federally protected rights.

154.    Defendant Stambaugh's conduct violated clearly established rights

belonging to Mr. Parra of which a reasonable jail official knew or should have known.

155.    Mr. Parra was and continues to be damaged by Defendant Stambaugh's

violation of his First Amendment rights.

156.    As a direct result of Defendant Stambaugh's unlawful actions as described

above, Mr. Parra suffered actual economic and emotional injuries, in an amount to be

proven at trial.

### FOURTH CLAIM FOR RELIEF
### Colorado State Law – Malicious Prosecution
### (Against Defendant Coffman)

157.   Mr. Parra hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

158.   Defendant Coffman, by filing multiple frivolous criminal charges against Mr. Parra, contributed to bringing a prior criminal action against Mr. Parra.

159.   The prior criminal case ended in favor of Mr. Parra as the Alamosa County District Court dismissed the Harassment or Intimidating a Witness or Victim charges.

160.   There was no probable cause for any of the charges initiated by Defendant Coffman against Mr. Parra.

161.   The prosecution initiated by Defendant Coffman terminated in Mr. Parra's favor after each charge was either dismissed or the subject of acquittal at trial.

162.   Defendant Coffman engaged in the retaliatory and baseless prosecution of Mr. Parra with malice.

163.   As a direct result of Defendant Coffman's unlawful actions as described above, Mr. Parra suffered actual economic and emotional injuries, in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a jury trial on issues so triable, and that this Court enter judgment in his favor, and award him all relief allowed by law, including but not limited to the following:

a.      Appropriate relief at law and equity;

  b. Compensatory damages for the violations of his First, Fourth and Fourteenth Amendment rights in an amount to be determined at trial;

  c. Punitive damages on all claims allowed by law, in an amount to be determined at trial;

  d. Pre-judgment and post-judgment interest at the appropriate lawful rate;

  e. Attorneys' fees and costs; and

  f. Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED: July 9, 2019

RATHOD | MOHAMEDBHAI LLC

*s/ Nicholas A. Lutz*
Nicholas A. Lutz
Matthew J. Cron
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
nl@rmlawyers.com
mc@rmlawyers.com

ATTORNEYS FOR PLAINTIFF